IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**GENE GALES, JR.**                                                                                              **PLAINTIFF**

**v.**                                                                                  **CIVIL ACTION NO.: 2:11-cv-244-MTP**

**HATTIESBURG CITY COUNSEL, ET AL.**                                 **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the Court on the Motion for Summary Judgment [98] filed by Defendants the City of Hattiesburg, Neal Rockhold[1], Brandon Badon, Zach Rooke, Joshua Crawford, Grant Thomas[2], and Frazier Bolton. Having considered the parties' submissions, applicable law, and case record, the Court finds that the Motion [98] should be granted.

**FACTUAL BACKGROUND**

On December 8, 2011, Plaintiff Gene Gales, proceeding *pro se* and *in forma pauperis* filed his Complaint [1] pursuant to 42 U.S.C. § 1983. Through his Complaint, and as clarified during his *Spears*[3] hearing, Plaintiff asserts claims against Defendants relating to three arrests. Specifically, Plaintiff claims that on April 1, 2010, Defendant Rockhold, a police officer for the City of Hattiesburg, wrongfully arrested him for burglary. Plaintiff also claims that on May 7, 2011, Defendants Crawford, Thomas, Badon, and Rooke, police officers for the City of Hattiesburg, wrongfully arrested him for possession of burglary tools. Finally, Plaintiff claims

---

[1] On the docket and in several pleadings this defendant is listed as Rock Hold, but it appears from the record that his name is actually Neal Rockhold.

[2] On the docket and in several pleadings this defendant is listed as Thomas Grant, but it appears from the record that his name is actually Grant Thomas.

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on June 12, 2012.

that on September 9, 2011, Defendants Thomas and Rooke wrongfully arrested him for burglary. In addition to the police officers, Plaintiff asserts claims against the Chief of Police, Frazier Bolton, and the City of Hattiesburg. (Omnibus Order [50].)  On December 20, 2013, Defendants moved for summary judgment, arguing that the officers are entitled to qualified immunity and that Chief Bolton and the city are otherwise entitled to summary judgment.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment must be rendered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322-23.  The movant bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *Id*. at 323. The burden then shifts to the nonmoving party to go beyond the pleadings and designate, by affidavit, depositions, answers to interrogatories, or admissions on file, specific facts showing that there is a genuine issue for trial. *Id*. at 324.

At the summary judgment stage, the Court must consider the facts in the light most favorable to Plaintiff. *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 Fed. App'x

666, 667 (5th Cir. 2012).

## ANALYSIS

Plaintiff's claims are before the Court pursuant to 42 U.S.C. § 1983. Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. § 1983). Accordingly, Plaintiff must demonstrate a genuine issue of material fact as to the following two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law.

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability.") (citations omitted). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 556 U.S. 662,

676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

The police officers in this case argue that they are entitled to qualified immunity. Qualified immunity shields government officials performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). The Fifth Circuit has held:

> Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent . . . placed the statutory or constitutional question beyond debate. Therefore, a plaintiff seeking to overcome qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. A court has discretion to decide which prong to consider first.

*Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal citations omitted).

The usual summary judgment burden of proof is altered somewhat in the case of a qualified immunity defense. *See Gates v. Tex. Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). Once a defendant asserts a good faith qualified immunity defense,

the burden shifts to the plaintiff to show that the defense is inapplicable. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). "Negating qualified immunity 'demands more than bald allegations and conclusionary statements.'" *Fleming v. Tunica County*, 497 Fed. App'x 381, 388 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 995 (5th Cir. 1995)). Plaintiff "must allege facts specifically focusing on the conduct of [the individual defendant] which caused his injury." *Id.* "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [the plaintiff] has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The qualified immunity determination should be made before trial as a matter of law unless material disputed facts exist as to whether the official acted in a reasonable manner. *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993); *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011); *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) ("Immunity ordinarily should be decided by the court long before trial").

**Unlawful Arrests**

The Fourth Amendment requires that an arrest be supported by probable cause. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). Probable cause has been defined as "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v.DeFillippo*, 443 U.S. 31, 37 (1979).

April 1, 2010

5

Plaintiff alleges that on April 1, 2010, Defendant Rockhold, arrested him for burglary without probable cause. In his Motion for Summary Judgment, Officer Rockhold argues that he is entitled to qualified immunity because Plaintiff has failed to identify a clearly established statutory or constitutional right that he violated. In his affidavit, Officer Rockhold states that he was not involved in Plaintiff's arrest but simply transported him from the Hattiesburg Police Department to the Forrest County Detention Center. (MSJ Ex. A.)

Plaintiff responded by stating that Officer Rockhold did participate in his arrest. (Response [102] Ex. 2.) Plaintiff came forward with a police report from April 1, 2010. (Response [102] Ex. 1.) The report, however, demonstrates that two *other* officers investigated a burglary on that date. Plaintiff also presented Forrest County inmate lists from April 28 and April 29, 2010. (Response [102] Ex. 1.) These lists provide no support for Plaintiff's opposition to summary judgment.[4]

Even if the Court accepts as true Plaintiff's assertion that Officer Rockhold participated in his April 1, 2010, arrest, Plaintiff has failed to overcome the qualified immunity defense. Plaintiff is required to come forward with evidence specifically focusing on Officer Rockhold's conduct and how that conduct deprived Plaintiff of his constitutional rights. *See Fleming*, 497 Fed. App'x at 388. Plaintiff has failed to even allege facts specifically focusing on Officer Rockhold's wrongful conduct. Plaintiff simply states that Officer Rockhold participated in an

---

[4] Plaintiff asserts that the inmate lists show that there were two separate arrests made on April 1, 2010. Even if that were true, it would not demonstrate that Officer Rockhold participated in any violation of Plaintiff's constitutional rights.

arrest without probable cause. This is a conclusory, unsupported allegation.[5] Plaintiff has not come forward with specific facts that would allow this Court to draw the inference that Officer Rockhold violated his constitutional rights. *See Backe*, 961 F.3d at 648. The burglary charge was eventually dismissed, but "[t]he fact that the charges were later dismissed does not render the arrest 'illegal and unlawful'" *May v. Kimball*, 2009 WL 3756866, *3 (S.D. Miss. Nov. 6, 2009) (citing *Piazza v. Mayne*, 23 F. Supp. 2d 658, 662 (E.D. La. 1998)). Accordingly, Officer Rockhold is entitled to judgment as a matter of law on the basis of qualified immunity.

May 7, 2011

Plaintiff alleges that on May 7, 2011, Defendants Crawford, Thomas, Badon, and Rooke arrested him for possession of burglary tools without probable cause. In their Motion for Summary Judgment, Defendants point out that this charge is still pending and has not been resolved in the Plaintiff's favor. A civil rights action should be dismissed when it would necessarily imply the invalidity of the plaintiff's conviction or sentence. *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck*, however, does not bar "an action which would impugn *an anticipated future conviction*." *Wallace v. Kato*, 549 U.S. 834, 393 (2007). Accordingly, *Heck* does not bar Plaintiff's claim at this time, but it may impact the claim. Courts ordinarily should not forge ahead with such claims. To the contrary, if *Heck* could impact a case in the future, that case may be stayed "until the criminal case or the likelihood of a criminal case is ended." *Mackey v.*

---

[5] In his Response [102], Plaintiff states that Officer Rockhold "willingly and knowingly participated and fully involved [sic] in the Plaintiff's April 1, 2010 false arrest, false imprisonment and malicious prosecution . . . without probable cause . . . ." In his original Complaint [1], Plaintiff states that the officers "were well aware of the fact that these elements [of burglary] was not meet in this case . . . ." In his Response [55] to Officer Rockhold's Answer, Plaintiff states that Defendants "constantly arrest[ed] the Plaintiff" and he "will show the illegality of the arrests."

*Dickson*, 47 F.3d 744, 746 (5th Cir. 1995); *see also Wallace*, 549 U.S. at 393-94.

Although a stay might be appropriate to determine if *Heck* will eventually bar this claim, the Court should consider if there are other grounds for dismissal. *See Busick v. City of Madison, Mississippi*, 90 Fed. App'x. 713, 714 (5th Cir. 2004). Defendants argue that they are entitled to summary judgment based on qualified immunity, and the Court may address this argument.

In Mississippi, a police officer may arrest a person if the officer has probable cause to believe the person possesses burglary tools. "It is unlawful for any person to have in his possession implements, tools, or instruments designed to aid in the commission of burglary, larceny or robbery . . . ." Miss. Code Ann. § 97-17-35 (2000). The elements of this crime are "(1) adaptation and design of the tool for breaking and entering; (2) possession of such tools by one with knowledge of their character; and (3) a general intent to use or employ them in taking and carrying away another's property." *Peters v. State*, 920 So. 2d 1050, 1054 (Miss. App. 2006). Even tools designed for a lawful purpose may be considered burglar's tools if the circumstances create probable cause to believe the possessor intended to use the tools during a burglary or similar crime. *Id.*

Officer Badon's report from the date in question describes the events leading to Plaintiff's arrest.

> I observed a black male riding his bike on Rosa Ave. and John St. I then noticed that the black male noticed my patrol unit and attempted to avoid me from noticing him. I then initiated my parol unit light and got out with the black male. I identified the black male as . . . Gene Gales, who has a long history of burglary. During my interview with Gales I noticed that he had [tools]. Gales could not advise me where he was coming from. Gales changed his story several times while speaking with him.

(MSJ Ex. B.) This encounter took place at approximately 2: 30 a.m. Badon arrested Plaintiff

8

following the encounter.

The tools in Plaintiff's possession included a bag, pair of gloves, flashlight, multi-tool, pliers, bolt cutters, and three screwdrivers. (MSJ Ex. B.) Also included in the police file was a crime stat sheet for the area in which Plaintiff was arrested. It demonstrates that several burglaries had taken place in the month prior to Plaintiff's arrest. (MSJ Ex. B.) Officer Rooke came forward with a sworn affidavit stating he believes that, from the police records, there was probable cause to arrest Plaintiff. (MSJ Ex. B.)

According to Plaintiff, he was simply riding his bike and the tools found were the tools of his trade.[6] Plaintiff argues that the circumstances of his encounter with Officer Badon did not constitute probable cause for his 2:30 a.m. arrest.

The police record, however, indicates that Plaintiff was out at 2:30 a.m. carrying a bag, pair of gloves, flashlight, multi-tool, pliers, bolt cutters, and three screwdrivers. Plaintiff conspicuously attempted to avoid being noticed by law enforcement. Officer Badon questioned Plaintiff about his whereabouts, and Plaintiff could not provide a consistent answer. Those circumstances coupled with the officer's knowledge that Plaintiff had previously been arrested for burglary and that several resent burglaries had occurred in the area lead to the conclusion that Officer Badon had probable cause to make the arrest for possession of burglary tools. *See U.S. v. Pearson*, 448 F.2d 1207, 1213 (5th Cir. 1971) ("There are other indications of felonious intent in the possession of the tools–presence in the area where burglaries had recently been committed, the time of night–about 3:00 A.M., the squealing of tires and driving for about a block without

---

[6] Plaintiff claims that he works as a handyman, heavy equipment operator, electrician, carpenter, brink mason, small engine repairman, and automotive body repairman. (Response [102] at 11.)

lights.")

"This court is 'not willing to second guess the officer . . . who must act on the spur of the moment if that officer's action can be classified as arguably reasonable.'" *Glenn*, 242 F.3d at 313 (quoting *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). Officer Badon exercised reasonable discretion based on his perception of the circumstances on the scene, and this Court finds that Defendants Crawford, Thomas, Badon, and Rooke are entitled to qualified immunity and judgment as a matter of law. *See U.S. v. Pearson*, 448 F.2d 1207 (5th Cir. 1971).

September 9, 2011

Plaintiff alleges that on September 9, 2011, Defendants Thomas and Rooke arrested him for burglary of a dwelling without probable cause. After Plaintiff's arrest, the State initially charged him with burglary of a dwelling but amended the indictment to burglary of a non-dwelling. Plaintiff was convicted of this crime, but the conviction was overturned by the Mississippi Court of Appeals because the State failed to plead two essential elements of burglary of a non-dwelling in the indictment. *See Gales v. State*, 2013 WL 6171076 (Miss. App. Nov. 26, 2013). The court of appeals, however, did not address the issue before this Court: whether probable cause existed for Plaintiff's arrest for burglary.

The elements of burglary of a dwelling are: "(1) the unlawful breaking and entering of a dwelling; and (2) the intent to commit some crime when entry is attained." *Kirkwood v. State*, 52 So. 3d 1184, 1187 (Miss. 2011). The elements of burglary of a non-dwelling are (1) the unlawful breaking and entering into a building, (2) where anything of value is kept for use, and (3) the intent to commit some crime when entry is attained. *See Gales*, 2013 WL 6171076 at *1.

The reports of Officer Thomas and Officer Rooke describe the events leading to Plaintiff's arrest. According to the reports, Officer Thomas and Officer Rooke responded to a possible burglary reported by a witness. The witness informed the officers that she observed a black male next to a neighbor's home with what appeared to be mattresses from the home. She also noticed that the boards covering the neighbor's front door had been removed and the front door was open.[7] The witness confronted the man and informed him that she was going to call the police. Thereafter, he left the scene. (MSJ Ex. B.)

The witness described the suspect to the officers, and Officer Rooke began searching for him. Officer Rooke found a male matching the description hiding in a wooded area and holding a flashlight. Because of prior encounters, Officer Rooke identified the suspect as Gene Gales. Officer Rooke escorted Plaintiff to the scene. The witness identified Plaintiff as the person she had confronted regarding the mattresses.[8] Thereafter, the officers arrested Plaintiff. Defendant Rooke came forward with a sworn affidavit stating he believes there was probable cause to arrest Plaintiff.

Plaintiff argues that these circumstances do not constitute probable cause. The Court disagrees. The officers were faced with an open door to a home that had previously been boarded shut, property that had been removed from the home, a suspect hidden in a wooded area, and an identifying witness. The circumstances were enough for an officer to reasonably believe

---

[7] The witness stated that the homeowner was currently living in Texas due to her husband's medical condition.

[8] Although she identified Plaintiff as the perpetrator, she stated that it appeared he had changed shirts. Later, officers returned to the wooded area where Plaintiff had been located and found a backpack and a shirt.

that probable cause existed to arrest Plaintiff.  Officers may rely on an eyewitness's account and identification to establish probable cause. *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 753-54 (5th Cir. 2001).  The actions of Officer Thomas and Officer Rooke were reasonable given the circumstances.  These Defendants are entitled to qualified immunity and judgment as a matter of law.

The City of Hattiesburg and Police Chief Frazier Bolton

Plaintiff also asserts claims against the City of Hattiesburg and Police Chief Frazier Bolton.  Neither a local governmental entity nor a supervisory official may be held liable for a civil rights violations under a theory of vicarious liability or respondeat superior. *Monell*, 436 U.S. at 691-95; *Oliver*, 276 F.3d at 742 & n. 6.  A local governmental entity may be liable under Section 1983 only when a policy, custom, or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 691-95.  "Supervisory officials may be held liable only if "(i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional polices that causally result in plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 199 (5th Cir. 1996).

Plaintiff alleges that there was a wide-spread custom, practice, and policy of Hattiesburg police officers harassing and arrestting him without probable cause.  A "description of a policy or custom and its relationship to the underling constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't.*, 130 F.3d 162, 167 (5th Cir. 1997).  The Plaintiff has failed to come forward with specific facts regarding the policy or custom and its relationship to the underling constitutional violation.  Plaintiff simply makes a conclusory, unsupported allegation.

Moreover, Plaintiff did not present evidence of an underlying constitutional violation.  As previously discussed, he failed to demonstrate that there is a genuine issue of material fact as to whether the officers arrested him without probable cause.  Accordingly, the City of Hattiesburg and Chief Frazier are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court finds that Defendants' Motion for Summary Judgement [98] should be granted.  Accordingly,

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment [98] is GRANTED,

2. This action is dismissed with prejudice, and

3. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 6th day of March, 2014.

s/ Michael T. Parker
United States Magistrate Judge